# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Maurice Walker,
    Petitioner,

vs.                                       Case No. 1:08cv580
                                               (Spiegel, S.J.; Black, M.J.)

Warden, Chillicothe Correctional
Institution,
    Respondent.

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This case is now before the Court on the petition and respondent's "Answer/Return Of Writ" with exhibits. (Docs. 1, 14).

### Procedural Background

On September 9, 2002, the Hamilton County, Ohio, grand jury returned a seven-count indictment against petitioner and two co-defendants; petitioner was charged in five of the seven counts. (Doc. 14, Ex. 1). Specifically, petitioner was charged with two counts of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1) (Counts One and Two) and attached firearm specifications; one count of robbery in violation of Ohio Rev. Code § 2911.02A)(2) (Count Three); one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(2) (Count Four) and attached firearm specifications; and one count of failure to comply with an order or signal of a police officer in violation of Ohio Rev. Code § 2921.331(B) (Count Six). (*Id.*).

On December 23, 2002, petitioner entered guilty pleas to one of the

aggravated robbery counts with one of the attached firearm specifications, the kidnapping charge with one firearm specification, and the failure-to-comply charge; as part of the plea agreement, the State dismissed the remaining charges against petitioner. (*Id.,* Ex. 2).

On February 7, 2003, petitioner was sentenced to terms of imprisonment totaling 14 years, which consisted of: concurrent "mandatory" ten-year prison terms for the aggravated robbery and kidnapping offenses; a three-year term of actual incarceration for the firearm specification attached to the aggravated robbery count, which was to be served consecutively and prior to the sentence imposed for the underlying offense; and a consecutive one-year prison term for the failure-to-comply offense. (*Id.,* Ex. 3).

With the assistance of counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, raising three assignments of error challenging his sentence. (*Id.,* Exs. 4-5). On December 12, 2003, the Ohio Court of Appeals overruled two of petitioner's claims, but sustained one of the assignments of error challenging the imposition of "mandatory" sentences for aggravated robbery and kidnapping; the matter was remanded for re-sentencing in accordance with the appellate court's instruction to omit the term "mandatory" from the sentencing entry. (*See id.,* Ex. 7). No appeal was taken to the Supreme Court of Ohio from this decision.

On March 4, 2004, petitioner was re-sentenced to the same terms of imprisonment, but, in accordance with the Ohio Court of Appeals' remand order, the sentences imposed for aggravated robbery and kidnapping were no longer referred to as "mandatory." (*Id.,* Ex. 8).

With the assistance of a new appellate attorney, petitioner timely appealed the re-sentencing entry to the Ohio Court of Appeals, First Appellate District; petitioner asserted the following assignments of error challenging his sentence:

1. The trial court erred to defendant's prejudice by imposing a consecutive sentence for failure to comply.

2. The trial court erred to defendant's prejudice by imposing maximum consecutive sentences without findings by a jury, or admissions by defendant, of the factors necessary to support those sentences [in violation of the Supreme Court's decision in *Blakely v.*

2

*Washington,* 542 U.S. 296 (2004)].

(*Id.,* Ex. 10).

On January 12, 2005, the Ohio Court of Appeals overruled petitioner's *Blakely* claim, but sustained the assignment of error challenging the consecutive one-year sentence that was imposed for the failure-to-comply offense. (*Id.,* Ex. 12). The state appellate court vacated that sentence and remanded the case for re-sentencing, after concluding that the trial court failed to find as required under a provision of Ohio's sentencing statute that "a prison term would be consistent with the purposes of sentencing and that Walker was not amenable to community control" before imposing a prison sentence for the fourth-degree felony. (*Id.,* pp. 1-2).

On February 9, 2005, petitioner was re-sentenced a second time in accordance with the Ohio Court of Appeals' January 12, 2005 decision. Specifically, petitioner was re-sentenced on the failure-to-comply count to two years of community control "concurrent with the prison sentence" imposed for the other offenses for a "total sentence" of 13 years. (*Id.,* Ex. 17). The State pursued an appeal from this decision to the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 18). However, on March 30, 2005, the Court of Appeals granted the petitioner's motion to dismiss the appeal and, on April 21, 2005, overruled the State's motion for reconsideration. (*See id.,* Exs. 19-23). Respondent states that "[n]o appeal was taken [from these decisions] to the Supreme Court of Ohio." (*Id.,* Brief, p. 6).

In the meantime, petitioner's counsel pursued a timely appeal from the Ohio Court of Appeals' January 12, 2005 decision to the Supreme Court of Ohio, claiming as the sole proposition of law that the "portion of Ohio's sentencing guidelines which permits a judge to make the factual findings necessary to impose non-minimum and maximum sentences beyond the presumptive maximum permitted without such findings is an unconstitutional denial of the right to due process and trial by jury." (*Id.,* Exs. 13-14).

On June 29, 2005, the Supreme Court of Ohio *sua sponte* ordered that the case be "held for the decisions in Supreme Court Case Nos. 04-1771, *State v. Quinones,* and 04-1568, *State v. Foster.*" (*Id.,* Ex. 15). However, on the Supreme Court of Ohio rendered its decision in *State v. Foster,* 845 N.E.2d 470 (Ohio

3

2006), and on May 3, 2006, the Supreme Court issued a Judgment Entry in the instant case reversing the judgment of the court of appeals and remanding the matter "to the trial court for resentencing consistent with" *Foster*. (*Id.,* Ex. 16).

A third re-sentencing hearing was held on June 9, 2006 in accordance with the Supreme Court of Ohio's May 3, 2006 remand order.[1] After hearing counsels' arguments and defendant's statement requesting "leniency" (*see id.,* June 9 Sentencing Hearing Tr.), petitioner was re-sentenced to the same aggregate 13 year prison term previously imposed at the second re-sentencing hearing on February 9, 2005.[2] (*Id.,* Ex. 25).

Petitioner's counsel timely appealed to the Ohio Court of Appeals, First Appellate District, claiming as the sole assignment of error that petitioner was "improperly sentenced to non-minimum and maximum terms of imprisonment without findings by a jury or admissions of the facts formerly required by R.C. 2929.14." (*Id.,* Exs. 27-28). Counsel specified that the following issues were presented for review in adjudicating petitioner's claim of error:

---

[1] On May 26, 2006, prior to the June 9, 2006 re-sentencing hearing, petitioner's counsel filed a "Motion For Resentencing To Comply With Law In Effect When Defendant's Offense Was Committed And With Defendant's Right To Trial By Jury–Alternative Motion To Withdraw Plea." (Doc. 14, Ex. 24). However, on June 9, 2006, before the matter proceeded to sentencing, petitioner's counsel stated on the record that she had discussed with her client "the issue of the voluntariness of his plea in this matter and whether he wishes to at this time argue to the Court for withdrawal of that plea based on the fact that the advice that was given him by counsel at the time applied to the sentencing statute that is no longer in effect, and therefore, he was not fully informed of the effect of his plea." (*Id.,* June 9, 2006 Sentencing Tr. 2-3). Counsel informed the trial court that her client had "indicated to me he does not wish to withdraw his previously-entered pleas and that he wishes to stand on those pleas being fully advised at this time that the Court has discretion with regard to sentence anywhere within the range for those offenses without reference to the findings previously required." (*Id.,* Tr. 3).

[2] The sentencing entry filed on June 9, 2006 contained additional non-prison penalties, including a five-year suspension of petitioner's driver's license as a further penalty for the failure-to-comply offense; the entry also provided that petitioner was required to submit a DNA specimen and that on his release from prison, petitioner would be subject to five years of post-release control supervision by the Ohio Adult Parole Authority. (Doc. 14, Ex. 25). On June 27, 2007, the trial court entered an order terminating petitioner's placement in community control on the failure-to-comply charge. (*Id.,* Ex. 26).

4

> 1. The ex post facto and due process clauses of the United States and Ohio Constitutions forbid retroactively imposing a sentence which does not comply with the protections offered by the sentencing statutes in effect when the offense was committed, or in re-sentencing Defendant under a different, and more onerous, statute.
>
> 2. The rule of lenity bars interpretation of a sentencing statute in a manner most favorable to the state and least advantageous to the affected defendants.

(*Id.,* Ex . 28).

On April 18, 2007, the Ohio Court of Appeals overruled the assignment of error and affirmed the trial court's judgment, reasoning in pertinent part as follows:

> Defendant-appellant ... appeals from a sentence imposed for his role in the aggravated robbery of a check-cashing business, the kidnapping of the business's employee, and the failure to comply with an order of a police officer. Walker was originally sentenced for these offenses in December 2002. He was resentenced in March 2004, February 2005, and June 2006, after successful appeals.
>
> Walker's June 2006 resentencing occurred after a remand by the Ohio Supreme Court on the basis of *State v. Foster*. In *Foster*, the Ohio Supreme Court held certain portions of Ohio's felony sentencing statutes unconstitutional and severed them from the remaining sentencing statutes. The *Foster* court additionally directed that cases "on direct review" in which sentences were in violation of *Foster* must be remanded to trial courts for resentencing.
>
> In this appeal, Walker challenges the retroactive application of *Foster*'s severance remedy to his case under the Ex Post Facto and Due Process Clauses of the United States Constitution and the rule of lenity. We find no merit to this challenge.
>
> In [another First District Court of Appeals case], this court rejected similar arguments from a defendant resentenced pursuant to the decision in *Foster*. As in [that case], we hold that Walker's

resentencing does not violate ex post facto and due process principles and does not implicate the rule of lenity....

(*Id.,* Ex. 30) (footnotes to state case citations omitted).

Petitioner's counsel next timely appealed to the Supreme Court of Ohio, raising as propositions of law the two issues that she had presented for review on appeal to the Ohio Court of Appeals. (*Id.,* Exs. 31-32). On August 29, 2007, the state supreme court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 34).

Petitioner filed the instant federal habeas corpus petition in August 2008. (*See* Doc. 1). In the petition, petitioner alleges three grounds for relief challenging his prison sentence:

> **Ground One:** Petitioner is being held in violation of the Ex Post Facto Clause of ... the U.S. Constitution.
>
> **Supporting Facts:** When petitioner was originally sentenced it was a mandate of the trial court to make statutory findings in order to impose a non-minimum sentence and a maximum sentence for first time offenders. Since those findings could not be made with any of the trial court[']s resentencing efforts, the defendant was entitled to the minimum sentence. Instead the petitioner was sentenced to the maximum and sentenced in accordance with new law sentencing standards that were put in place during petitioner's appeals. Therefore, petitioner lost the rights and protections offered by the statute as it was when petitioner was originally sentenced.
>
> **Ground Two:** Petit[i]oner is being held in violation of the VIII Amendment of the United States Constitution.
>
> **Supporting Facts:** The petitioner has been subjected to cruel and unusual punishment with regards to a disproportionate sentence that is inconsistent with sentencing guidelines as they were when petitioner was originally sentenced.

6

**Ground Three:** Petitioner is being held in violation of the XIV Amendm[e]nt of the United States Constitution.

**Supporting Facts:** Petitioner has been deprived of the liberty of due process because petitioner was repeatedly resentenced yet the necessary statutory findings were not made. Now under the new sentencing guidelines the petitioner has been sentenced under statutes that are clearly more favorable for the state and least advantageous to the petitioner (the affected defendant).

(*Id.,* pp. 6-7, 9).

## OPINION

### A. Petitioner Is Not Entitled To Relief Based On His Claims Alleged In Grounds One And Three Challenging His Thirteen-Year Prison Sentence Under The Constitution's Ex Post Facto And Due Process Clauses

In Grounds One and Three of the petition, petitioner essentially claims that he was initially sentenced and re-sentenced in violation of his Sixth Amendment jury trial right under the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), but that the remedy established by the Supreme Court of Ohio in *Foster* to cure the constitutional infirmity should not have been applied by the trial court at his final re-sentencing in June 2006. (Doc. 1, pp. 6-6a, 9). In other words, it appears that petitioner is contending that (1) because the charged offenses, his conviction and his initial sentencing and re-sentencing occurred before *Foster* was decided, only a minimum sentence could be imposed; and (2) the final June 2006 sentencing entry reimposing pursuant to *Foster* maximum, concurrent ten-year sentences for the aggravated robbery and kidnapping offenses, as well as a three-year consecutive sentence on the firearm specification attached to the aggravated robbery count, violates the Constitution's Ex Post Facto and Due Process Clauses. (*See id.*).

In this case, the charged offenses occurred in 2002, and petitioner was convicted in December 2002 and first sentenced in February 2003, long before even *Blakely* and *Booker* were decided, respectively, in June 2004 and January 2005. Petitioner's first re-sentencing in March 2004 also occurred prior to *Blakely* and *Booker*. His second re-sentencing in February 2005 occurred after *Blakely* and

7

*Booker* were decided, but prior to *Foster*. The appeal from the first re-sentencing decision was pending before the Supreme Court of Ohio when *Foster* was decided, and it was on the basis of *Foster,* that the matter was remanded for a third time for re-sentencing in June 2006.

This case has a complicated procedural history, involving a sentence that was initially imposed in February 2003 and vacated on direct review on state-law technical grounds in December 2003 before even *Blakely* was decided. Neither *Blakely* nor *Booker* may be applied retroactively to cases on collateral review, where a petitioner's conviction and sentence previously had become final by the conclusion of direct review. *See, e.g., Humphress v. United States,* 398 F.3d 855, 860-63 (6th Cir.), *cert. denied,* 546 U.S. 885 (2005); *Spiridigliozzi v. United States,* 117 Fed.Appx. 385, 394 (6th Cir. Nov. 15, 2004) (not published in Federal Reporter); *cf. Allen v. Moore,* 1:05cv731, 2007 WL 651248, at *4 & n.1 (S.D. Ohio Feb. 23, 2007) (Barrett, J.) (unpublished) (noting that *Blakely* applied in case where the petitioner was sentenced pre-*Blakely*, but his direct appeal was still pending on the date *Blakely* was decided).[3] Moreover, in *Foster,* the Supreme Court of Ohio expressly stated that its decision extended retroactively only to cases that were still pending on direct review. *Foster,* 845 N.E.2d at 499.

An argument can be made that *Blakely, Booker* and *Foster* are not applicable to the portion of petitioner's sentence challenged in the instant action which has remained the same since February 2003 – *i.e.*, the ten-year maximum concurrent sentences for the aggravated robbery and kidnapping offenses and consecutive three-year sentence for the firearm specification attached to the aggravated robbery count. However, because petitioner was re-sentenced two more times for state-law, non-*Blakely* errors in sentencing, and the Supreme Court of Ohio remanded the matter a third time to the trial court for re-sentencing in light of *Foster*, which was decided during the pendency of petitioner's appeal to that court from the Court of Appeals' decision rejecting petitioner's *Blakely* challenge to the first re-sentencing entry, the undersigned will assume without deciding that *Blakely,*

---

[3] In *Allen, supra,* 2007 WL 651248, at *4 n.1, the court quoted as follows from the Supreme Court's decision in *Beard v. Banks,* 542 U.S. 406, 411 (2004) (in turn quoting *Caspari v. Bohlen,* 510 U.S. 383, 390 (1994)): "State convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a timely petition has been finally denied.'"

*Booker* and *Foster* may be applied in assessing the constitutionality of petitioner's challenged sentence.

As an initial matter, petitioner is unable to prevail on any claim challenging the imposition of a consecutive sentence for the firearm specification in light of *Blakely*, *Booker* and *Foster*. The Supreme Court held in *Oregon v. Ice,* 129 S.Ct. 711 (2009), that consecutive sentencing decisions do not trigger Sixth Amendment *Blakely* concerns. *See also Evans v. Hudson,* 575 F.3d 560, 565-66 (6th Cir. 2009) (reversing district court's grant of conditional writ of habeas corpus because the Supreme Court's decision in *Ice* effectively foreclosed the petitioner's ineffective assistance of appellate counsel claim).

Second, petitioner is unable to prevail on his *ex post facto* claim alleged in Ground One challenging the retroactive application of the *Foster* remedy on his third re-sentencing to correct the constitutional infirmities in Ohio's sentencing statutes. The claim, which has been raised in numerous analogous cases, already has been thoroughly discussed and rejected by this Court and other federal district and state courts in Ohio. *See, e.g., Hooks v. Sheets,* No. 1:07cv520, 2008 WL 4533693, at *3-5, *13-19 (S.D. Ohio Oct. 3, 2008) (Beckwith, C.J.; Hogan, M.J.) (unpublished) (and cases cited therein).[4]

---

[4] *See also Wright v. Warden, Pickaway Corr. Inst.,* __ F.Supp.2d __, No. 1:07cv1022, 2009 WL 1850170, at *1, *23-25 (S.D. Ohio June 25, 2009) (Barrett, J.; Hogan, M.J.) (to be published) (and cases cited and quoted therein); *Kelley v. Brunsman,* 625 F.Supp.2d 586, 594-95, 605-08 (S.D. Ohio 2009) (Spiegel, S.J.; Hogan, M.J.); *Smith v. Brunsman,* 626 F.Supp.2d 786, 788, 792-95 (S.D. Ohio 2009) (Barrett, J.; Black, M.J.) (noting that "both the federal district courts and Ohio courts have rejected *ex post facto* challenges to the *Foster* decision"); *Rettig v. Jefferys,* 557 F.Supp.2d 830, 841 (N.D. Ohio 2008) (Polster, J.; McHargh, M.J.) (citing Ohio cases "uniformly reject[ing] *ex post facto* challenges to the *Foster* decision"); *Smith v. Welch,* No. 3:08cv2917, 2009 WL 2167863, at *1-3, *13-16 (N.D. Ohio July 17, 2009) (Economus, J.; Vecchiarelli, M.J.) (unpublished); *Schaub v. Brunsman,* No. 1:08cv2522, 2009 WL 2143746 (N.D. Ohio July 16, 2009) (Boyko, J.: Perelman, M.J.) (unpublished); *Mason v. Brunsman,* No. 1:07cv1020, 2009 WL 2169035, at *8-9, *34-37 (S.D. Ohio July 16, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished); *Clagg v. Wolfe,* No. 2:08cv144, 2009 WL 1424427, at *1-6 (S.D. Ohio May 20, 2009) (Sargus, J.) (unpublished); *Pena v. Cooper,* No. 2:08cv195, 2009 WL 1324046, at *1, *16-19 (S.D. Ohio May 12, 2009) (Smith, J.; Abel, M.J.) (unpublished); *Newman v. Wilson,* No. 5:08cv483, 2009 WL 1212262, at *1, *11-12 (N.D. Ohio Apr. 30, 2009) (Oliver, J.; Perelman, M.J.) (unpublished) (and cases cited therein); *Trewartha v. Brunsman,* No. 2:07cv981, 2009 WL 614963, at *1, *10-13 (S.D. Ohio Mar. 5, 2009) (Holschuh, J.; Abel, M.J.) (unpublished); *Haning v. Wolfe,* No. 2:07cv1093, 2009 WL 541156, at *1, *3-5 (S.D. Ohio Feb. 27, 2009)

The same reasoning contained in these numerous decisions uniformly rejecting *ex post facto* challenges to *Foster* applies to the case-at-hand. *Foster* did not change the elements of the offenses that petitioner was convicted of committing, and petitioner faced the same penalty ranges in sentences for those offenses both before *Foster* (when he committed the offenses) and after *Foster*. *Cf. McGhee v. Konteh,* No. 1:07cv1408, 2008 WL 320763, at *11 (N.D. Ohio Feb. 1, 2008) (unpublished).

As a district court recently reasoned in an analogous case where the petitioner similarly argued that only the minimum sentence could be imposed based on the pre-*Foster* law in effect when he committed the charged offense:

> The Supreme Court has never held ... that the retroactive application of a court's statutory construction which results in the loss of a presumption of a minimum sentence is either violative of the *Ex Post Facto* Clause or due process. In the instant matter, such was the effect of *Blakely* and *Foster* upon O.R.C. § 2929.14. The plain fact is that the holdings of those cases did not alter the elements necessary to convict Petitioner, nor the potential penalties Petitioner faced for his conduct. *Blakely* and *Foster* simply altered the procedure by which a sentencing court determined the appropriate sentence. Thus, Petitioner's assertion that "it is the date of the defendant's *alleged conduct* that dictates the sentencing law that applies to a defendant," is inapposite.... That principle applies only where a change in the law that determines the potential penalties for a crime imposes a more onerous penalty at the time of sentencing than it would have at the time the crime was committed. *See Miller v. Florida,* 482 U.S. 423, 430-32 ... (1987); *see also Dobbert v. Florida,* 432 U.S. 282, 293-294

---

(Watson, J.; Abel, M.J.) (unpublished) (and cases cited therein).*Cf. Turner v. Warden, Noble Corr. Inst.,* No. 1:08cv309, 2009 WL 866841, at *2, *9 (S.D. Ohio Mar. 31, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished) (although the court held that *Foster* did not apply to the petitioner's sentence, it noted that "both the federal courts and Ohio courts have rejected *ex post facto* challenges to the *Foster* decision"); *Collins v. Warden, Chillicothe Corr. Inst.*, No. 3:06cv256, 2008 WL 728390, at *1, *8-9 (S.D. Ohio Mar. 17, 2008) (Rice, J.; Merz, M.J.) (unpublished) (holding that "[w]hile Petitioner's original sentence violated *Blakely,* his new sentence [under the *Booker* remedy adopted in *Foster*] did not," and that "[n]othing in the United States Constitution calls such a sentence into question").

> ... (1977) (finding no *ex post facto* violation where the "new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime.").
>
> ....Neither *Blakely* nor *Foster* had any effect on the range of penalties for each of [the charged] crimes, and Petitioner had fair warning as to the punishment that might result from his conduct.... [W]hen Petitioner was sentenced, he faced exactly the same potential penalties....

*Smith v. Welch, supra,* 2009 WL 2167863, at *2-3 (emphasis in original).

Third, petitioner is unable to prevail on any claim challenging the *Foster* court's adoption of the severance remedy, which was utilized in *Booker* to address constitutional problems in the federal sentencing guidelines, to cure the constitutional infirmity created by four provisions contained in Ohio's sentencing statutes, which were deemed by the *Foster* court to be *Blakely*-offending.[5]

In *Foster*, the Ohio Supreme Court provided a thoughtful and well-reasoned rationale for adopting the *Booker* severance remedy over other options utilized by other states in examining their sentencing statutes and crafting remedies in response to *Blakely*. *See Foster,* 845 N.E.2d at 494-96, 498-99.[6] Finding that "Ohio's felony-sentencing structure may be severely wounded, but it is not fatally

---

[5] Specifically, in *Foster,* the state supreme court found that "Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas" mandating additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms; and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *See Foster,* 845 N.E.2d at 490-94. As discussed above, under the Supreme Court's recent decision in *Ice*, it now appears that the provision regarding consecutive sentencing determinations does not trigger *Blakely* Sixth Amendment concerns after all.

[6] In *Foster,* 845 N.E.2d at 494, the court pointed out that these "states have come to varying conclusions regarding the impact of *Blakely*, with no two supreme courts resolving the constitutional issues identically. The selected remedies fall into three broad categories: requiring sentencing juries, reducing sentencing to minimum terms until the state legislature acts, and severing the offending sections."

unsound," the court pointed out that Senate Bill 2 delegated the role of determining the applicability of sentencing factors to judges rather than to juries, and that the "overriding goals of Ohio's sentencing scheme are to protect the public and punish the offender." *Id.* at 494-95. Moreover, most importantly, in rejecting the defendants' proposed remedy of limiting the trial court's ability to impose a sentence to only presumptive minimum sentences, the state supreme court stated that Ohio's legislature would not have "limited so greatly the sentencing court's ability to impose an appropriate sentence," and that in enacting Senate Bill 2, the Ohio legislature instead provided a "sentencing scheme of 'guided discretion' for judges, intending that the required findings guide trial courts to select sentences within a range rather than to mandate specific sentences within that range." *Id.* at 495.

While recognizing that one of the Ohio legislature's goals in enacting Senate Bill 2 was to promote uniformity and reduce sentencing disparities, the Ohio Supreme Court also emphasized in *Foster* that the "breadth of reforms" established by the legislation was "wide," and that a "fundamental element" of the law was to "preserve[] 'truth in sentencing,'" as well as "to preserve the paramount goals of community safety and appropriate punishment and the major elements of [the] sentencing code." *Id.* at 498.

In *Foster,* the Ohio Supreme Court thus made it clear that the presumptive prison terms established as part of Senate Bill 2 did not rise to the level of a state-created liberty interest. *Cf. State v. Freeman,* No. 07CAA01-0001, 2008 WL 795381, at *4 (Ohio Ct. App. 5 Dist. Mar. 27, 2008) (unpublished) (the Ohio "legislature never mandated a mandatory minimum sentence upon *every* offender who had not previously served a prison term") (emphasis in original), *appeal dismissed,* 898 N.E.2d 971 (Ohio 2008); *State v. Long,* No. 07 BE 27, 2008 WL 852077, at *1 (Ohio Ct. App. 7 Dist. Mar. 18, 2008) (unpublished) (and state cases cited therein) ("the presumptions of minimum or concurrent sentences, which were excised from the felony sentencing statutes, were only presumptions and not guarantees"), *appeal dismissed,* 891 N.E.2d 771 (Ohio 2008); *State v. Mallette,* No. 87984, 2007 WL 530187 (Ohio Ct. App. 8 Dist. Feb. 22, 2007) (unpublished) (and state cases cited therein) (holding that "no vested [or accrued] right has been affected by *Foster,* as a "presumed sentence can be 'taken away' without the defendant's consent" and defendants "are not entitled to enforce or protect specific sentences prior to sentencing"), *appeal dismissed,* 875 N.E.2d 101 (Ohio 2007). Instead, under Ohio law, the sentencing court retained the authority to impose non-

minimum, maximum and consecutive sentences based on findings intended to guide the court's discretion in selecting a sentence within a range rather than to mandate a specific sentence within that range.

The undersigned is persuaded by the state supreme court's rationale, which is based on its interpretation of Ohio's sentencing statutes. The highest court of the state is the final arbiter of this state-law issue; therefore, "[w]hen it has spoken, its pronouncement is to be accepted by federal courts as defining state law." *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 236 (1940); *see also Hicks v. Feiock,* 485 U.S. 624, 629-30 & n. 3 (1988) (applying *West* standard in federal habeas case). This Court is bound by the state supreme court's interpretation of state law as reflected in Ohio's sentencing statute.

Fourth, petitioner is not entitled to relief to the extent he alleges in Ground Three that he was denied due process because the state courts violated the "rule of lenity" in statutory interpretation by retroactively applying the "harsher" *Foster* severance remedy in reimposing the same thirteen-year prison sentence for the aggravated robbery and kidnapping offenses with specification that was originally imposed in February 2003. Respondent argues in the return of writ that this claim, essentially attacking the state court's interpretation of a state statute, does not constitute a cognizable ground for federal habeas relief. (Doc. 14, Brief, pp. 8-11). Respondent's argument has merit.

This federal habeas Court has no power to grant relief based on such a claim because the rule of lenity is merely a canon of statutory interpretation and "nothing in the federal constitution requires a state court to apply the rule of lenity when interpreting a state statute." *Bowen v. Romanowski,* No. Civ. 05-cv-72754-DT, 2005 WL 1838329, at *2 (E.D. Mich. Aug. 2, 2005) (unpublished) (citing *Sabetti v. Dipaolo,* 16 F.3d 16, 19 (1st Cir.), *cert. denied,* 513 U.S. 916 (1994)); *cf. Lurie v. Wittner,* 228 F.3d 113, 126 (2nd Cir. 2000) ("The rule of lenity is a canon of statutory construction, not in itself federal law.") (citing *United States v. Torres-Echavarria,* 129 F.3d 692, 698 n.2 (2nd Cir. 1997), *cert. denied,* 522 U.S. 1153 (1998), and *United States v. Harris,* 959 F.2d 246, 258 (D.C. Cir.), *cert. denied,* 506 U.S. 932, 933 (1992)), *cert. denied,* 532 U.S. 943 (2001).

The Second Circuit has pointed out that the rule of lenity "is called into service to protect the constitutional right to fair warning." *Lurie,* 228 F.3d at 126. The court continued that because the rule is a "canon of construction rather than a

federal law, at least two circuits have determined–and we see no Supreme Court caselaw to the contrary–that federal courts cannot vacate a state conviction on lenity grounds unless a state criminal statute (i) is unconstitutionally vague, or (ii) otherwise fails to give constitutionally required 'fair notice.'" *Id.* (citing *Sabetti,* 16 F.3d at 19, and *Poole v. Wood,* 45 F.3d 246, 249 (8th Cir.), *cert. denied,* 515 U.S. 1134 (1995)).

Petitioner has not argued, nor does it appear, that the relevant provisions of Ohio's sentencing statute are subject to attack on constitutional vagueness grounds. Moreover, as discussed above in rejecting the *ex post facto* claim alleged in Ground One, both before and after *Foster,* petitioner had "fair notice" of the potential penalties he faced and of the trial court's discretion to impose those penalties. Therefore, petitioner is unable to prevail on any claim, which may be remedied in this proceeding, stemming from the alleged violation of Ohio's "rule of lenity" in interpreting the state sentencing statute.

Finally, petitioner is not entitled to relief to the extent he also alleges in Ground Three that he was denied due process because the "necessary statutory findings were not made" when he was sentenced and re-sentenced before *Foster* was decided and the matter was remanded for the third and final time for re-sentencing under *Foster*.

Contrary to petitioner's suggestion, it appears that the trial court did make the requisite findings under the sentencing statute then in effect when it initially imposed the aggregate thirteen-year sentence for the aggravated robbery and kidnapping offenses and firearm specification in February 2003 and re-sentenced petitioner for the first time on March 4, 2004. (*See* Doc. 14, February 3, 2003 Sentencing Hearing Tr. 42-43, 47-50; March 4, 2004 Sentencing Hearing Tr. 38-42). Indeed, on direct appeal from the initial sentencing decision, the Ohio Court of Appeals expressly ruled that "the trial court made the requisite findings on the record," and that the record supported those findings for imposing non-minimum terms of incarceration; the court also rejected petitioner's claims that the trial court erred in its findings and conclusions required under the statute for imposing the maximum terms of incarceration for aggravated robbery and kidnapping. (*See id.,*

Ex. 7, pp. 3-5).[7]

Accordingly, in sum, none of petitioner's claims of constitutional error in sentencing, which are alleged in Grounds One and Three of petition, have merit. Therefore, petitioner is not entitled to habeas corpus relief based on those claims challenging petitioner's aggregate thirteen-year prison sentence under the Constitution's Ex Post Facto and Due Process Clauses.

## B. Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground Two Of An Eighth Amendment Violation At Sentencing Because The Claim Was Not Raised To The State Courts And, In Any Event, Lacks Merit

In Ground Two of the petition, petitioner alleges that his thirteen-year aggregate prison sentence amounts to "cruel and unusual punishment" prohibited by the Constitution's Eighth Amendment, because it is disproportionate to and inconsistent with the sentence he was entitled to receive under the sentencing guidelines in effect when he was originally sentenced. (Doc. 1, p. 7).

In the return of writ, respondent contends that petitioner has waived this claim for relief because he never raised it to the state courts. (Doc. 14, Brief, pp. 12-16). This argument has merit.

In recognition of the equal obligation of state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, a petitioner can no longer present claims to the state courts, he has waived the claims unless he can demonstrate cause for the procedural default

---

[7] It is conceded that the trial court addressed only the failure-to-comply charge and did not make any statutory findings for the imposition of the aggregate thirteen-year sentence, at the second re-sentencing hearing on February 9, 2005. (*See* Doc. 14, February 9, 2005 Sentencing Hearing Tr. 8-10). However, as the trial court pointed out at the outset of that hearing, the matter had been remanded by the Ohio Court of Appeals for re-sentencing a second time only on the failure-to-comply count; in all other respects, petitioner's sentence had been affirmed. (*See id.,* February 9, 2005 Sentencing Hearing Tr. 2 & Ex. 12).

15

and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

Here, in the absence of a showing of "cause" for his procedural default in failing to raise the Eighth Amendment claim until this proceeding, and in the absence of a showing of a "fundamental miscarriage of justice," the undersigned concludes that the constitutional claim alleged in Ground Two is waived and thus procedurally barred from review.

In any event, petitioner's Eighth Amendment claim clearly lacks merit.

The Eighth Amendment proscribes the infliction of "cruel and unusual punishments." U.S. Constit. amend. VIII. This provision "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm,* 463 U.S. 277, 284 (1983). In *Solem,* the Court stated:

> Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is *per se* constitutional. As the Court noted in *Robinson v. California,* 370 U.S. [660,] 667 [(1962)], a single day in prison may be unconstitutional in some circumstances.

*Id.* at 290 (footnote omitted).[8]

Strict proportionality between a crime and its punishment is not required by the Eighth Amendment. *United States v. Marks,* 209 F.3d 577, 583 (6th Cir.) (citing *Harmelin v. Michigan,* 501 U.S. 957, 959-60 (1991)), *cert. denied,* 531 U.S. 882 (2000). Rather, "only an extreme disparity between crime and sentence offends the Eighth Amendment." *Id.* (citing *United States v. Hopper,* 941 F.2d 419, 422 (6th

---

[8] In the omitted footnote, the Court emphasized that it was not acting outside its role by substituting its judgment for that of the sentencing court as to the appropriateness of a particular sentence, but rather was deciding whether the sentence under review was "within constitutional limits" under the Eighth Amendment.

Cir. 1991)); *see also United States v. Wiley,* 132 Fed.Appx. 635, 643 (6th Cir. May 26, 2005) (not published in Federal Reporter), *cert. denied,* 546 U.S. 995 (2005); *cf. United States v. Raad,* 406 F.3d 1322, 1324 (11th Cir.) (when addressing an Eighth Amendment claim, the reviewing court must "make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed"), *cert. denied,* 546 U.S. 893 (2005). A sentence that falls within the maximum penalty set by statute "generally does not constitute 'cruel and unusual punishment'" within the meaning of the Eighth Amendment. *Bryant v. Yukins,* 39 Fed.Appx. 121, 123 (6th Cir. Apr. 29, 2002) (not published in Federal Reporter) (quoting *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000), in turn quoting *United States v. Organek,* 65 F.3d 60, 62 (6th Cir. 1995)), *cert. denied,* 537 U.S. 925 (2002).

In this case, the Ohio Court of Appeals determined on direct appeal from the initial February 2003 sentencing decision that the trial court did not abuse its discretion in imposing more than the minimum terms of incarceration or in imposing the maximum term of ten years for the aggravated robbery and kidnapping offenses. (*See* Doc. 14, Ex. 7, pp. 3-5). In so ruling, the court reasoned that the "brutal nature of the crimes and the fact that the victim was an elderly woman" supported the trial court's determination that "the minimum term would have demeaned the seriousness of the offender's conduct." (*Id.,* p. 3). The court further concluded that the maximum term of incarceration was appropriate based solely on the trial court's finding that petitioner had "committed the worst forms of the offenses;" the court reasoned in pertinent part as follows:

> ....The assailants held an elderly woman at gunpoint, violently forced her into the business and repeatedly threatened to kill her. Moreover, one of the assailants held her head to the ground with his foot and warned her not to report the crimes. As a result of the offenses, [the victim] suffered physical injuries and lasting emotional trauma.
>
> ...[T]he trial court was presented with evidence that the harm was great. Also, as [the victim] noted at the sentencing hearing, she had, from the beginning of the encounter, expressed a willingness to comply with the assailants' demands, thus making the physical and verbal brutality all the more repugnant. And while Walker notes that he was merely the getaway driver and in fact attempted to calm the other assailants during the commission of the offenses, we hold that the trial court was correct in finding that he had participated in the worst forms of aggravated

robbery and kidnapping.

(*Id.,* pp. 4-5).

The imposition of the consecutive three-year term of incarceration for the firearm specification attached to the aggravated robbery count apparently was not contested on direct appeal. As the trial court pointed out at the initial sentencing hearing, however, the sentence was mandatory under state-law because two of the assailants wielded loaded firearms when committing the aggravated robbery and kidnapping offenses and petitioner, who was in the getaway car, "knew those men had ... gun[s]; in so finding, the trial court pointed out the petitioner was "the smartest of the bunch," had planned the crime in advance with the two assailants and was in communication with them during the commission of the crimes. (*Id.,* February 7, 2003 Sentencing Hearing Tr. 42-44, 47-49).

Upon review of the record, the undersigned concludes that petitioner has failed to demonstrate that the imposition of the thirteen-year aggregate prison sentence, which was reaffirmed by the trial court at petitioner's re-sentencing on March 4, 2004 (*see id.,* March 4, 2004 Sentencing Hearing Tr. 38-42), was grossly disproportional to the criminal offenses committed by him. Moreover, contrary to petitioner's contention in Ground Two, the sentence, which has remained unchanged since petitioner was first sentenced in February 2003, was imposed in accordance with the statutory guidelines then in effect. Petitioner thus has not shown that his sentence, which fell within the statutory range of penalties set by statute at the time the offenses occurred, violated the Eighth Amendment's Cruel and Unusual Punishment Clause.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief based on the merits of the otherwise procedurally-defaulted Eighth Amendment claim alleged in Ground Two of the petition.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue in this case, because

petitioner has not made a substantial showing that he has stated a "viable claim of the denial of a constitutional right" or that the issues presented herein are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *cf. Smith v. Welch, supra,* 2009 WL 2167863, at *4. Moreover, to the extent the undersigned also has concluded that the claim alleged in Ground Two of the petition is subject to dismissal on procedural waiver grounds, a certificate of appealability should not issue with respect to that claim under the first prong of the two-part standard enunciated in *Slack,* 529 U.S. at 484-85, because "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[9]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis* at the close of this case, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon any showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  12/1/09                               s/Timothy S. Black
       cbc                                  Timothy S. Black
                                            United States Magistrate Judge

---

[9] Because this Court finds that the first prong of the two-part *Slack* standard has not been met with respect to the Eighth Amendment claim alleged in Ground Two of the petition, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in that ground for relief. *See Slack,* 529 U.S. at 484. As discussed above, however, it appears clear that petitioner's claim alleged in Ground Two also fails to satisfy the second prong of the *Slack* standard.

19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Maurice Walker,
    Petitioner,

vs                          Case No. 1:08cv580
                               (Spiegel, S.J.; Black, M.J.)

Warden, Chillicothe Correctional
Institution,
    Respondent.

# NOTICE

      Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation **within 10 days** after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed **within 10 days** after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

J:\BRYANCC\2009 habeas orders\08-580denypet.blakely-fosterseverance.expostfacto-8thA.wpd